## HOT SPRINGS RAILROAD COMPANY V. TYLER.

<div style="float:right">36 205<br>73 332</div>

1. HOMESTEAD ENTERER.

   A homesteader of government land may, between making his entry and settling with his family upon the land, and the perfecting of his title to it, unite with another as a partner, and build a mill upon it, and give to the partner an interest in the mill and its profits for his advances to build it, without any violation of the homestead statute of congress. Such use of the land is for his own benefit in connection with his residence, within the spirit of the legislation of congress, and not an alienation of the land.

2. TRESPASS: *Injury to partnership mill on homestead of one partner.*

   Partners in a mill situated on an unperfected homestead of one of them, have such an interest and possession as entitle them to a joint action for damages against a railroad company for obstructing the mill race in the construction of its road-bed.

3. DAMAGES: *Destroying use of mill.*

   Where a railroad company, having no right of way, so constructs its road-bed across an unperfected homestead as to obstruct a mill race and destroy the use of the mill on it, the measure of damages is the difference between the value of the mill site and machinery before the obstruction and after it.

APPEAL from *Garland* Circuit Court.

*J. M. Moore,* for appellant:

H. B. Tyler could not vest in another any interest in the land, it being a recent homestead entry. *Rev. Stat. U. S.,* sec. *2290.*

Appellee not entitled to value of machinery. *Shearman & Red. on Neg.,* sec. *598; Field on Dam.,* sec. *126,* et seq.

Damages excessive on the evidence.

### STATEMENT.

EAKIN, J. This is an action by H. B. & B. C. Tyler against the railroad company for damages, occasioned by

running its track near and over a mill site, obstructing the flow of water in the race, and blocking the access to the mill for hauling purposes; all without any right of way.

The complaint alleges that the plaintiffs were in peaceable possession of the quarter section upon which the injuries occurred—and sets forth to show their right: that H. B. Tyler had *homesteaded* it on the twenty-third of October, 1873, and had since resided on it with his family. That by agreement, B. C. Tyler joined with him in building a mill, and cutting a race, etc., furnishing the money-capital and machinery for the purpose, whilst H. B. Tyler furnished the land and his own labor—all upon an agreement, " that they should divide the profits arising from said mill equally, after paying the expenses of running said mill." That the mill was built and in operation, and was rendered useless by the unauthorized action of the railroad company; which is set forth with sufficient certainty.

The answer, in two clauses, denied: First, that plaintiffs owned the land, or a homestead therein; and, second, all knowledge whether or not they were such owners, or in possession, or running the mill as alleged, or of its value, or of any information concerning these matters, upon which to ground a belief.

The issues were submitted to the court, sitting as a jury; and the judge, by consent of parties, himself viewed the premises. He found, as facts, that the company, without right of way, and against the objections of the plaintiffs, had run their road-bed over the quarter-section in question, of which plaintiffs were in peaceable possession with an interest; and on which they had made the improvements and built the mill, as alleged; that they were running it, at the time of the injury, with good machinery; that by reason of the action of defendant in so running its road-

bed, *the mill* was stopped, and would necessarily so continue; that *the land* was greatly cut up, and the residue, outside the road-bed, was directly and necessarily lessened in value. The damages, resulting as the "direct, necessary and natural consequences of the construction of the road-bed," exclusive of any profits that may have been realized from said mill, and exclusive of any speculative damages, were fixed at $2,000, with interest at 6 per cent. from the date of the injury. This amount the plaintiffs were held entitled to recover, and judgment was rendered accordingly.

The evidence shows the title, as alleged, to have been in H. B. Tyler, who made the contract, as alleged, with his father, B. C. Tyler; and that the latter advanced the capital, and was interested in the property and business of the mill. It further tends to show that the land itself had no appreciable value, either before or after the building of the road, independently of the mill site; and that the site was rendered worthless for its only useful purpose, by the action of the road. There was no direct proof to show any value of the land whatever. The proof as to the value of the mill and business, and the damage done them, is varying, but it may be fairly considered, taken in connection with the view of the premises, as sufficient to support the findings, without palpable excess.

The court, in declaring the law, held that a joint action might be maintained; but in order to recover damages for appropriation of a right of way, in such action, the plaintiffs must each of them show either title or an interest in the land; that this was such an action, joined with the further purpose to recover injuries for a mill situated thereon, requiring an interest to be shown in each, without which the action could not be sustained as joint.

It refused to declare that in estimating the damage, the

value of the machinery could not be recovered, or that the measure of damage could not exceed the value of the mill exclusive of the machinery. But instead thereof declared the measure of damage to be the injury to the land and the mill, resulting directly from the illegal acts, and which could not have been avoided by the exercise of reasonable diligence on their part

### OPINION.

Under the homestead acts of the United States, which permitted this entry by H. B. Tyler, he was required to swear, on filing his application, that it was made "for his exclusive use and benefit" "for the purpose of actual settlement and cultivation, and not, either directly or indirectly for the use and benefit of any other person." When he comes to ask for his patent, for which the time was not ripe when this action was brought, he must again swear that he has not alienated any part of it, except for purposes not touching this case. *Rev. Stat. U. S., secs. 2290. 2291.*

1. HOMESTEAD ENTRY: Used for partnership purposes before completion of.

His agreement with his father, subsequently made, does not appear to have been determined upon when he made the entry. Its object was not to give the father title to a half interest in the land itself, nor was there any alienation. The only valuable use to which the land could be put, required an outlay of capital which he did not have, and his agreement with his father, who had, that if he would so expend it in building a mill and furnishing it with machinery, he would allow him half the profits of the business whilst the partnership lasted, seems to us using the land for his own benefit, in connection with his residence, entirely within the spirit of the legislation of congress. That was directed to prevent the use of the names of others in speculation, and this case does not come within the mis-

chief or aim of the statute. The pre-emptor was using it substantially for his own benefit, consistently with his purpose to also retain it as a homestead. Nevertheless the contract for the time, and for the purpose of the agreement, gave the father a temporary right of possession of the property, which would entitle him to join in trespass against a tortfeasor. See *Gantt's Digest, sec. 4475.* Besides, if the misjoinder were patent, the proper method of raising the point, under the Code, would have been by motion to strike out the name of B. C. Tyler, which is allowable at any stage. (*Ib., sec. 4616.*) It was not proper pleading to reserve the point to be raised by motions to declare the law, upon the trial of a broad issue, made by denial of property in plaintiffs. It is difficult to see how a joint judgment in favor of plaintiffs, if in other respects correct, can affect the substantial rights of the defendant. See *ib., sec. 4619, and also Booker v. Robbins & Page, 26 Ark.,* 660.

2. TRESPASS For injury to partnership mill on homestead of one.

We find no error in the law, declared as that properly governing damages. Corporations, like individuals, are liable for all the direct consequences of the wrongful acts of their agents, and the proof shows that the acts of defendant's agents were not only unlawful but quite arbitrary. The *business* of plaintiffs was a valuable property, which made the value of the mill site; gave indeed to the land all the value it had. Whether the proper action at common law would have been by trespass or case will not be considered. The injury was material, and found to be directly, and not in any speculative sense, detrimental to the rights and property of the plaintiff.

3. DAMAGES Destroying use of mill: Measure of.

Upon the building of the road, when it was found to render the mill site useless, it was nevertheless the duty of plaintiffs to take reasonable care of the machinery and make the best of its remaining value. But it is not true

that the value of the machinery can not be estimated at all as part of the damage. The true question is how much less valuable was the mill site, and the machinery, than it would have been if the wrongful act had not been done.

We think the circuit judge fairly conceived the law, and the damages are not plainly excessive.

Affirmed.