BLACKBURN *v.* THOMPSON.

## Opinion delivered February 5, 1917.

1. EVIDENCE—PLEA OF USURY—BURDEN OF PROOF.—The burden of proving usury is upon the party pleading the same, where it does not appear upon the face of the instrument alleged to be usurious.

2. PARTIES—CAPACITY TO SUE—DUTY TO OBJECT.—Objections to the plaintiff's capacity to sue must be taken by demurrer or answer, else they will be deemed to have been waived.

3. APPEAL AND ERROR—CHANCERY HEARING—INCOMPETENT TESTIMONY.—In an action in chancery it is the duty of the chancellor to hear and determine the cause between the parties to the record, and to consider only the competent testimony as between such parties.

4. USURY—PROOF—EVIDENCE OF CONVERSATIONS WITH DECEASED.—A. and B. entered into a contract with C. B. died and A. and B.'s administrator joined in an action in equtiy against C. on the contract, and to foreclose a mortgage given by C. to A. and B. C. defended on the ground that the contract was usurious. *Held,* although B.'s administrator was improperly joined as party plaintiff, that nevertheless he was a party to the record, and that therefore under section 2, Schedule of the Constitution of 1874, C. could not testify in the action as to conversations relative to the transactions between himself and deceased in this action.

5. USURY—PROOF.—Testimony that when C. purchased goods from B., that B. charged him $1.10 for every one dollar's worth of goods bought, is insufficient to prove usury, in the absence of any testimony showing that the charge was for a period less than a year.

6. USURY—PRESUMPTION—PROOF.—Usury will never be presumed and must be proved by the party pleading it; usury will not be imputed to the parties when the opposite conclusion can be reasonably and fairly reached.

7. MORTGAGES—STATEMENT OF TERMS.—A mortgage is not invalidated for a failure to state the nature and amount of the debt to be secured, but it will be sufficient if it contains a general description, sufficient to embrace the liability intended to be secured, and to put a person examining the records upon inquiry, and to direct him to the proper source for minute and particular information of the amount of the incumbrance.

8. MORTGAGES—AMBIGUITY—ORAL PROOF.—Oral proof is admissible to explain ambiguities in a written mortgage, and to ascertain the intention of the parties to it.

Appeal from Desha Chancery Court; *Zachariah T. Wood,* Chancellor; affirmed.

*Coleman & Lewis,* for appellant.

The chancellor erred in holding that defendant was not a competent witness to testify as to the conversation with the deceased partner. The surviving partner was allowed to testify as to the same transaction, and there is no good reason why the other's mouth should be closed. 19 Ark. 443; 26 *Id.* 135; 54 *Id.* 395; 69 *Id.* 242. The administrator was not a necessary party to the suit. George on Partnership, p. 384; 65 Am. Dec. 293; 44 Ill. 33; 27 Mich. 537; 23 Me. 550; Shumaker on Partnership, 284; 17 Ark. 477; 30 Cyc. 623; 114 Ga. 668; 61 *Id.* 189. The testimony was competent. Cases *supra;* 41 Tex. 449; 56 Miss. 455; 62 *Id.* 831; 18 R. I. 652; 13 Nev. 279; 8 Allen 101; 12 Gray 453; 51 Ala. 108; 63 Ind. 87; 29 Ind. App. 563.

2. The account was usurious. 111 Ark. 593; 46 *Id.* 131.

3. The items for whisky sold and the charges for goods, moneys or whisky sold to tenants should have been excluded.

4. There is not sufficient proof of the account. There is no showing that the books were regularly or fairly kept or correct. Kirby's Digest, § 3071-2; 60 Ark. 333.

5. There was no proof that the mortgage was given to secure $2,000.00 and future as well as past or existing indebtedness. 66 Ark. 550. If usury is established the only charge against the land would be the lien for taxes. There was no proof that if oral testimony is admissible, that future advances were covered by the mortgage.

*Jack Bernhardt* and *Sam Frauenthal,* for appellees.

1. Defendant was not a competent witness as to conversations and transactions with the deceased partner, W. P. Thompson. His administrator was a party to the suit. 66 Ark. 550; 93 *Id.* 447. If the administrator was not a proper party, then there was a misjoinder and the question should have been raised by demurrer or answer. Kirby's Digest, §§ 9993, 6996. This was not done. 43 Ark. 33; 19 *Id.* 602; 35 *Id.* 360;

36 *Id.* 205; 76 *Id.* 391; 95 *Id.* 32. The testimony was clearly incompetent. 46 Ark: 306; 63 *Id.* 556; 83 *Id.* 210; 68 N. J. Eq. 480; 12 Encl. Ev. 761; 4 Jones on Ev., §§ 772, 777.

2. There was no usury. 55 Ark. 265; 91 *Id.* 458; 49 L. R. A. 550; 66 Ark. 387; 91 *Id.* 458. Usury must be clearly proven. 68 Ark. 162; 91 *Id.* 458; 39 Cyc. 1054. Where a loan is made without a specific time for payment, the fact that the interest is more than the legal rate will not render the loan usurious, for the time of payment may be postponed. 166 Pa. St. 207; 31 Atl. 47; 39 Cyc. 946. The evidence of usury must be clearly proven, with certainty. 57 Ark. 251.

3. The items for whisky and supplies furnished tenants were excluded. At any rate, the correct amount is found by the chancellor.

4. The proof is sufficient. The books were properly admitted as evidence. 2 Enc. Ev. 610, 613, 615, etc.; 52 L. R. A. 552, 561.

5. The mortgage secured $2,000.00 and future advances. The instrument speaks for itself—the intention of the parties is plain. 27 Cyc. 1057; 46 Ark. 70; 91 *Id.* 400, etc. The decree is equitable and just and should be affirmed as no prejudicial errors appear.

STATEMENT BY THE COURT.

T. T. Thompson and W. P. Thompson were partners doing business under the firm name of the Laconia Supply Company. W. P. Thompson died on the 19th of June, 1914. J. J. Blackburn, July 2, 1912, executed a mortgage on certain real property to the Laconia Supply Company to secure the sum of $2,000.00 more or less, for merchandise and cash advanced, evidenced by running account. On the 12th of August, 1912, the Desha Bank & Trust Company qualified as administrator of the estate of W. P. Thompson. On the 17th of September, 1914, this suit was instituted by T. T. Thompson, the surviving partner, and the Desha Bank & Trust Company, as administrator of the estate of W. P. Thompson deceased, against Blackburn to

recover on account the sum of $2,645.39, and to foreclose the mortgage.

Blackburn answered, admitting that the mortgage was given to secure a past indebtedness to the Laconia Supply Company; denied that it was for future supplies, and denied the correctness of the account. He further set up that the account was void for usury.

Blackburn testified that he had done business with the Laconia Supply Company for about four years; that he rented his place during the years 1911, 1912 and 1913, and did not supply the tenants. The Laconia Supply Company furnished the tenants and he waived the rent. He had a conversation with Percy Thompson with regard to the money and supplies to be furnished on account in January, 1912. He details this conversation as follows: "He (Thompson) said: 'I will have to charge you interest of ten per cent. on the dollar flat for money or supplies.' I said, 'Well, Percy, I think that is pretty steep.' He said, 'Well, I am going to have to charge it to you because supplies are the same as money and I will have to charge you ten per cent. on each dollar you get. If you get $1.00 I will have to charge you $1.10 for it.' I agreed to that charge. I got goods and money after that under that agreement. Later on a mortgage was executed to cover what I owed at that time. I had on hand some money from Mr. Thompson, I suppose about $800. I gave him a mortgage to secure that and the open account to that time. The mortgage was given for $2,000.00. The mortgage was prepared when I came in. I said, 'Well, Percy, I don't owe you anything like $2,000.00, and I am not going to sign it.' He said, 'Well, I don't know exactly what the amount is. Here are the books and the charges. The ledger shows your account. I noticed several items charged for $100.00 at ten per cent., that is $110.00. That is all right according to my agreement. I said, 'Percy, I haven't time to go over this account now. Give me an itemized statement of it.' He said, 'I will give you an itemized statement later on, and we will make this mortgage for $2,000.00, more or less.'

At this time I did not know how much I owed. I saw the books, but did not go over them. When this agreement was made in the spring of 1912 the account was to be paid the next January. That was understood. That was the way I always did business with him."

The further testimony of this witness tends to prove that the account in suit was not accurate, and that he did not owe the amounts charged on his account for any goods or money furnished to the tenants on his place. The testimony of the witness goes into detail showing the items of cash and the interest charged. As to some of these items, witness admits that he received the cash, but according to his testimony, there was a usurious charge of interest on the items of cash. Other items of cash he denies having received. The witness concludes his testimony by stating that for such amounts as he got, both of merchandise and cash, there was a ten per cent. charge. The amount was supposed to be paid on the first of January. The items abbreviated on the account, marked " Mdse." meant liquor that he bought from the company.

The testimony of T. T. Thompson was to the effect that the Laconia Supply Company furnished Blackburn and his tenants during the years 1911, 1912 and 1913. He paid the taxes for Blackburn during the years 1911, 1912 and 1913 and exhibited the receipts. He was associated with his brother, W. P. Thompson, who kept the books. Witness did not keep up with the accounts at all. Witness stated that he was present when a conversation occurred between Mr. Blackburn and his brother. Blackburn said: "I am going to need some money; my wife is sick.' I said, ' Mr. Blackburn, how much will you need?' He said, 'I don't know how much. I will want a little along.' I said, 'Mr. Blackburn, we have to borrow money ourselves from the Desha Bank & Trust Company. We pay eight per cent. interest. We can't let you have money, keep the books, our time and stationery for the same amount per cent. that we have to pay. Therefore, wouldn't it be worth

ten per cent.?' He said, 'Old boy, that will be all right; I need the money; got to have it.'"

This witness' testimony further tended to show that they furnished the tenants on Blackburn's place during the years 1911, 1912 and 1913 on the orders of Blackburn. Most of the orders were verbal. The mortgage, which was prepared on July 2, 1912, was intended to include all the merchandise purchased by Blackburn at the credit prices and also the cash and check charges, with ten per cent. added. The mortgage was intended to cover all that.

This witness exhibited as a part of his deposition a statement showing taxes paid for Blackburn, amounting to $146. Witness exhibited cancelled checks and drafts showing cash advanced amounting to $915.00.

Witness H. L. Thompson testified that he was a brother of the other Thompsons, who constituted the partnership known as the Laconia Supply Company. He was a bookkeeper and lived in Memphis. He prepared the statement made an exhibit with the complaint, upon which the suit was instituted. He made two statements. Found mistakes in the first statement, which he had corrected in the revised statement. The items of cash and interest charged upon the books were reflected in the revised statement. He had not undertaken to change the books of original entry. The balance found to be due from Blackburn to the Laconia Supply Company of $2,320.64 is a correct balance as reflected by those books, and to this is added the amount of $146.00, the amount of the tax receipts, making the total amount due $2,466.66. Witness was examined and cross-examined in detail on the various items of the account, and his testimony shows that there were many mistakes in the first statement filed. But in his last and revised statement he enters into detail showing these errors and also the corrections that were made, and stating the manner in which he made up the account from the books of the Laconia Supply Company. He concludes his testimony by stating that

"in every doubt as to the correctness of any charge I gave the benefit of the doubt to Mr. Blackburn."

Witness John Jones testified, in part, as follows: "I heard a conversation between Mr. Percy Thompson and Mr. Blackburn during the year 1912 in regard to Mr. J. J. Blackburn's business with the firm and his account. They were standing at the bar taking a drink and I was waiting on them. I heard Mr. Blackburn ask Mr. Percy what per cent. he was going to charge him on his business on the dollar for 1912, and Mr. Percy told him 10 per cent. on the dollar. Mr. Blackburn told him that he thought that it was too much, but he guessed he would have to stand it. When Mr. Thompson said he would charge him ten cents on the dollar Mr. Blackburn asked him how he meant, and he said if Mr. Blackburn got $5.00 he would charge him 50 cents interest and make the charge $5.50, and if he bought goods he would add the 10 cents to it when the goods were put down on the books and there would not be any more interest due after that. I don't know for sure as I heard anything about when the account would be paid, but Mr. Blackburn always paid in the fall, like everybody else that farms."

One witness who was a tenant on Blackburn's place during 1912 and 1913 and another one who was on his place during 1910, 1911, 1912 and 1913 testified that they purchased goods from the Laconia Supply Company on their own account, and not on any orders of Blackburn; that the credit was extended to them individually and not to Blackburn.

The chancery court held that the mortgage would not secure an account exceeding $2,000.00; that there was no usury in the account, and that the taxes paid by the Supply Company on the land were a lien on the same. The court eliminated from the account all items of liquor and the amounts furnished the tenants on Blackburn's place. A decree was entered in favor of the appellees in the sum of $2,000.00, with 6 per cent. interest on all cash items from the date advanced, and 6 per cent. interest on the amount of the account for 1912

from the 1st of January, 1913, until paid and on the account for 1913 from January 1, 1914, until paid, and also for the amount of the taxes paid on the lands, with interest at 6 per cent. on the amount as shown by the receipts from the date thereof until paid, and declared the total of these several sums a lien on the land and ordered the mortgage foreclosed for the payment of such sum. The court also entered a personal decree in favor of the appellees against the appellant for the balance due on the account and the amount of the personal taxes as shown by the receipts, with six per cent. interest from the date of such decree, and directed that the appellees have execution for such sum, but did not declare the same a lien on the lands. From that decree this appeal has been taken.

WOOD, J. (after stating the facts).

(1) There is no usury on the face of the account or the mortgage. Appellant admits the execution of the mortgage and that same was given to secure an amount then due, and sets up in defense the plea of usury. The burden was therefore upon appellant, by competent testimony, to establish his plea.

(2) Conceding, without deciding, that the administrator of the estate of W. P. Thompson was not a proper party, it is a fact nevertheless that the administrator, from the inception of the cause to its final hearing by the trial court, was a party plaintiff. Appellant, neither by demurrer nor answer raised any objection to the capacity of the administrator to join in the suit, and he must be deemed therefore, under our statute and decisions, to have waived such objection. Kirby's Digest, secs. 6093-6096.

As early as *Gossett* v. *Kent*, 19 Ark. 602, 607, this court said: "In cases of misjoinder of plaintiffs the objection should be taken by demurrer, for if not so taken, and the court proceeds to a hearing on the merits, it will be disregarded, at least if it does not materially affect the property of the decree." In that case it appeared on the face of the bill that one Smith was

improperly made a party complainant. He had no interest in the subject of the suit and no relief was prayed for him—a stronger case than the one at bar.

In the case of *Pettigrew* v. *Washington Co.*, 43 Ark. 33, we held that objections to the plaintiff's capacity to sue must be taken by demurrer or answer, else they will be deemed to have been waived. Such has been the uniform holding of this court. See *Murphy* v. *Myar*, 95 Ark. 32; *Kraft* v. *Moore*, 76 Ark. 391; *Hot Springs R. R. Co.* v. *Tyler*, 36 Ark. 205.

(3) The appellant allowed the cause to progress to a decree without raising any objection to the joinder of the administrator of W. P. Thompson as a party plaintiff and to the capacity of the administrator to sue. The appellant, without raising such objection, presented . his own deposition in support of his charge of usury. The court held that his testimony relating to the conversation between W. P. Thompson, deceased, and himself, tending to show a usurious contract, was incompetent. Appellant here challenges such ruling. It was the duty of the chancery court to hear and determine the cause between the parties to the record and to consider only the competent testimony as between such parties.

(4) Under section 2 of the schedule of the Constitution of 1874, neither party shall be allowed to testify in actions by administrators, in which judgment may be rendered for or against them, as to any transactions with or statement of the intestate.

In *McRae* v. *Holcomb*, 46 Ark. 306, we held that this provision of the Constitution applies only to parties to the record. In *Stanley* v. *Wilkerson*, 63 Ark. 556, we held, under the above provision, that "it is not the interest in the issue to be tried that renders incompetent, but the being a party of record to that issue;" that "competency or incompetency of the party as a witness is to be determined relatively to his status at the time he was proposed and objected to as a witness." See also *Snyder* v. *Harris*, 61 N. J. Eq. 480.

Now, as we have shown, at the final hearing of this cause the administrator of W. P. Thompson was a party plaintiff to the record, and if a judgment had been rendered in favor of the appellant, such judgment would have necessarily resulted in a judgment for costs against the administrator, and even though no other judgment might have been rendered against the administrator, such judgment for costs might have been a substantial judgment, and will be treated as one calling for the application of the constitutional and statutory provisions requiring the exclusion of the testimony of the appellant relating to the alleged usurious contract between him and the deceased, W. P. Thompson. *Bush* v. *Prescott & N. W. Ry. Co.*, 83 Ark. 210, 213; Sec. 2, Schedule of Const., *supra;* Kirby's Dig., sec. 3093.

"The object and purpose of these statutes," says Mr. Jones, "then is to guard against the temptation to give false testimony in regard to the transaction in question on the part of the surviving party, and further to put the two parties to a suit upon terms of equality in regard to the opportunity of giving testimony. If one party to the original transaction is precluded from testifying by death, insanity or other mental disability, the other party is not entitled to the undue advantage of giving his own uncontradicted and unexplained account of the transaction. The sources of original information on the part of the representative of the deceased or incompetent person are so inadequate as compared with those of the surviving party that the law presumes the representative to be utterly unable to testify as to the details of the transaction, and hence excludes the adverse party." 4 Jones' Com. on Evidence, sec. 773, p. 628.

As was said by the Supreme Court of Florida, "What the living knows or would testify is excluded, because what the dead would testify if living cannot be or is not given in evidence, or because his representatives or assignee is not himself so acquainted with the facts of it as to encourage him to go upon the stand."

*Harris* v. *Bank of Jacksonville,* 22 Fla. 501, 1 Am. St. Rep. 201, 1 South. 140.

The rule of our Constitution finds just and appropriate application under the facts of this record because the alleged corrupt agreement which appellant claims rendered the account and mortgage in suit usurious was had alone, according to the testimony of the appellant, with the deceased partner, W. P. Thompson. Appellant's testimony falls both within the letter and the spirit of the provisions of our Constitution and the statute based thereon. Eliminating the testimony of appellant, the other testimony is not sufficient to establish the plea of usury.

(5) The testimony of Jones to the effect that he heard Thompson tell appellant that he would charge him 10 cents on the dollar, that is, if he got $5.00 he would charge him 50 cents interest and make the charge $5.50 and that if he bought goods he would add a 10 per cent. charge when the goods were put down on the books, was not sufficient to prove usury, for this testimony falls short of showing that the 10 per cent. interest on the money and the 10 per cent. charge on the goods was to be for a less period than one year from the time the money was advanced and the goods purchased. The witness who gives this testimony states that he did not know for sure that anything was said about when the account would be paid.

(6) The court cannot take judicial knowledge of when an account between a merchant and his customer is due. Usury cannot be established by presumption. The presumption is that parties will obey the law and not enter into a corrupt agreement to charge usurious interest, and the burden is upon the one who pleads usury to overcome this presumption by positive proof. "The wrong act of usury will never be imputed to the parties when the opposite conclusion can be reasonably and fairly reached." *Briggs* v. *Steele,* 91 Ark. 458.

The testimony of T. T. Thompson tended to show that he was present and heard the agreement between his brother and the appellant, and that his brother in

effect told appellant that his firm was paying 8 per cent. for money borrowed, and that they could not let appellant have the money for the same amount that they had to pay, but would have to charge him 10 per cent. on account of the trouble in keeping the books and for their time and stationery; that the books showing the charge of 10 per cent. on the checks and cash items conformed to their agreement with appellant. This testimony likewise falls short of showing that the interest on the account was to be at a greater rate than ten per cent. per annum. There is nothing in the testimony of Thompson to show either that the money advanced or the account for the goods and merchandise were due and payable in less than one year from the time the money and merchandise were obtained by appellant from the supply company.

Counsel for appellant say in their brief: ":Nowhere does T. T. Thompson contend that the account was not due at the end of the year." But that is a matter about which T. T. Thompson had a right to remain silent. It was not incumbent upon him to contend or show that the account was not due at the end of the year, but the burden was upon the appellant to show that it was due at that time or at such time as would make the account usurious.

Counsel for appellant rely upon the case of *Hall Bros. v. Johnson*, 111 Ark. 593. But in that case notes were given to cover future advances bearing ten per cent. interest from the date of the note, regardless of the date when the advances were made. Appellant in that case sued upon an account, and it is stated in the opinion: "It appears from the face of the account, as well as from H. G. Hall's own admission, that interest was charged at a higher rate than ten per cent. per annum." And in the statement of facts it is said: "It appears that appellants charged straight ten per cent. upon all amounts advanced during the year without reference to the time when the advances were made, and did not charge ten per cent. per annum."

No such proof was made in the instant case. Here there were no recitals in the mortgage as to any rate of interest to be charged, or fixing any time for the maturity of the debt secured. The account does not show on its face when it was due, and certainly does not contain any statement showing that interest was to be charged at a greater rate than ten per cent. per annum.

The chancellor construed the mortgage to secure an indebtedness not to exceed the sum of $2,000.00, even though the debt at the time the indebtedness became due and at the time the mortgagee sought to foreclose the mortgage might be for a much larger amount. It is reasonably certain from the testimony that the mortgage was given to secure the indebtedness of the appellant to the supply company that then existed, and also was intended to cover any future indebtedness as evidenced by appellant's running account with the company to the extent at least of $2,000.00.

(7) In *Curtis & Lane* v. *Flinn*, 46 Ark. 70, 72, Judge Cockrill, speaking for the court, said: "It is usual for the mortgage to set forth the amount of the debt to be secured and to recite that it is witnessed by a note, a stated account or other evidence of debt, but the neglect to do either or both does not necessarily invalidate the mortgage security. If the mortgage contains a general description, sufficient to embrace the liability intended to be secured and to put a person examining the records upon inquiry, and to direct him to the proper source for more minute and particular information of the amount of the incumbrance, it is all that fair dealing and the authorities demand." See *Hoye* v. *Burford*, 68 Ark. 256; *Cazort & McGehee Co.* v. *Dunbar*, 91 Ark. 400; *Richeson* v. *National Bank of Mena*, 96 Ark. 594, 604; *Briggs* v. *Steele, supra.*

(8) There was sufficient ambiguity in the mortgage to justify the introduction of oral testimony to ascertain the intention of the parties to it. When this testimony is considered, it is clear that the intention of the parties was to secure an indebtedness evidenced by a running account. The construction which the court gave the

mortgage was more favorable to appellant than he was entitled to, but the appellees have not appealed. The items for liquor and the items of the account furnished to appellant's tenants which the court eliminated amount to the total sum of $349.65. This amount deducted from the revised account, which the court found to be correct, except as to this sum, would leave more than the sum of $2,000.00 still due the Supply Company, and secured by its mortgage. On account of the loose and imperfect system of bookkeeping on the part of the Laconia Supply Company, as revealed by the testimony, we entertain some doubt as to the correctness of the revised account, but cannot say that the finding of the chancellor to the effect that this account is correct (except in the particulars designated by him) is clearly against a preponderance of the testimony.

The finding and decree of the chancellor as to the amount and lien for taxes is correct.

Upon the whole record we find no reversible error. The decree is therefore affirmed.

HART and SMITH, J. J., dissenting.