SUNDERLAND, EXECUTRIX *v.* BABCOCK.

5-561                                          277 S. W. 2d 74

Opinion delivered January 10, 1955.

[Rehearing denied April 25, 1955.]

*Rose, Meek, House, Barron & Nash* and *Phillip Carroll*, for appellant.

*Brockman & Brockman*, for appellee.

GRIFFIN SMITH, Chief Justice. The chancellor found that a loan evidenced by a note for $2,200 was not usurious and rendered judgment for $1,999—the amount actually received by the borrower.

The transaction occurred in this way: E. C. Kininmonth, doing business as Joe Kinney Construction Company, was using three pieces of heavy machinery belonging to E. N. Sunderland. The relationship of Kininmonth and Sunderland is unimportant except as that relationship reflects information regarding the loan.

James Junior Babcock moved to Arkansas in 1951 and at the time of trial owned 19 acres near Redfield, where he had engaged in truck farming. Having some information concerning maintenance and operation of machinery, Babcock accepted employment at Bauxite. The job tenure expired and he was told that Kininmonth needed some one to operate a bulldozer and dragline. At the end of the first day Babcock complained that the machinery was in bad condition. Substantial repairs, he thought, were imperative. Neither Kininmonth nor Sunderland had the ready cash to pay for essential reconditioning. Babcock had money on deposit at Chariton, Iowa. His check for $2,000 dated June 18th, 1953, to Twin City Bank of North Little Rock was paid on the 20th, but one dollar was deducted as a service charge. Three days later Twin City credited the account of Joe Kinney Construction Company with $1,999.

Babcock testified that he and Kininmonth were in the bank when the cashier was directed to place the money to the construction company's credit. Babcock was certain that up to that time nothing had been said about the terms of the mortgage. He did not know who was to prepare the note and security. They were delivered to him the 7th or 8th of July after complaint of delay had been made; nor, said Babcock, did he know, until

July 7th, that $2,200 instead of $2,000 would be paid under terms of the note and mortgage. Nothing had been said by or to Babcock about the rate of interest although Babcock testified that it was his agreement all along to put up the money without interest. His position as operator paid $75 per week.

The mortgage was filed July 10th. Babcock took the precaution to have the recorder check records to determine if the machinery was subject to a prior lien, and he stated that he understood the legal rate of interest was six per cent, but some one had said eight per cent. The recorder told him the note looked "o.k." Babcock had asked why $200 was added to the amount he deposited and Kininmonth replied that "they" were willing to pay that amount.

The note is dated June 24, 1953, payable $300 Sept. 5th, $300 October 5th, and $200 monthly thereafter until the full sum of $2,200 should be discharged. No payments were made. The $2,200 mortgage has corresponding provisions, but does not bear interest. An acceleration clause gave the mortgagee a right to declare all installments due upon default of any monthly payment.

Seemingly the joint enterprise undertaken by Kininmonth and Sunderland was not profitable. Kininmonth is referred to by appellant as having absconded. Sunderland died and his widow, as executrix, was sued by Babcock, who in his complaint of February 13th, 1954, asked for judgment on the note and foreclosure of the mortgage. Usury was pleaded in an answer of March 5th, whereupon (April 23d) Babcock amended his demand by asking that the judgment be for $1,999. A mistake of fact was alleged.

Our conclusion is that the plea of usury should have been sustained. Appellant has included in her brief a tabulation showing that a loan of $2,000 under terms of the mortgage would have yielded $107.45 through the in-

stallment payment plan adopted by the parties, an excess interest of $92.55.[1]

Mrs. Sunderland testified that when she asked Babcock why the note and mortgage were for $200 more than the amount advanced, he replied that the difference was interest. Babcock denied this and was sustained by Mrs. Babcock who says she was present and heard the conversations. All were interested parties and their statements will not be regarded as undisputed. But J. M. Castilo, a civil engineer, was definite in his recollection of the same conversation and testified that Babcock said the $200 was interest.

While it is true that the notary public before whom the mortgage was acknowledged testified that Kininmonth directed that the words ''Due June, 1954'' be inserted, and in response to an inquiry by Sunderland state that ''there would be no interest,'' the same witness said that she did not know that less than $2,200 was being advanced.

For affirmance appellee relies primarily on *Perry* v. *Shelby,* 196 Ark. 541, 118 S. W. 2d 849, where it was held that the evidence was sufficient to show that the lender had no intention of charging a greater rate of interest than ten per cent. But in that case the court found that the borrower, who was entrusted with preparation of the note and mortgage, knew what the law of usury was and purposely executed papers so that illegality could be pleaded, and the lender did not intend to charge more than eight per cent. ''To permit Perry [the borrower] to defeat the collection of the amount due appellee on the ground of usury would be permitting him to take advantage of his own attempt to perpetrate a fraud,'' said Mr. Justice Donham, who wrote the court's unanimous opinion.

In the case at bar we must assume that as late as February—seven months after the loan—Babcock looked

---

[1] We take no notice of the bank's deduction of $1 for service charges, since neither party seemingly regarded this as anything more than an error *de minimis.*

upon the note as a subsisting obligation for $2,200, otherwise he would have informed his attorney that an error had been made or a fraud perpetrated. We assume that the attorneys who filed the suit were not informed regarding the understanding Babcock now claims he had with the borrowers. On the contrary it seems perfectly clear that he discussed a loan without interest, but did not explain that $200 had been added to the sum advanced.

It is probably true that Babcock did not know the possible consequences of a loan to which ten per cent had been added as apparent principal when terms of the contract called for monthly repayments, but in the absence of fraud or mutual mistake the law conclusively presumes this knowledge; and when weight is attached to the testimony of Castilo it becomes difficult to believe that Babcock did not know why $200 had been added. Furthermore, his own testimony is not without significance. When asked whether, before filing the mortgage, he noticed that it called for $200 more than he had advanced, Babcock said, in effect, that he suggested that the papers be corrected, but Kininmonth said "they were willing to pay that." In the light of pertinent evidence Babcock's testimony that he was not willing to accept the interest is lacking in persuasive force.[2]

Our recent decisions, many of which are cited in the articles referred to in the second footnote, form a pattern designed to circumvent usury by evasion.

The history of jurisprudence discloses many instances where decisions, thought by judges who made

[2] An interesting discussion of the Usury Law of Arkansas—"A Study in Evasion," appears in the latest Arkansas Law Review and Bar Association Journal, written by George B. Collins and Virginia Harkey Ham. Collins is Teaching Associate, School of Law, Northwestern University, Evanston, Ill. He is a member of the Fayetteville (Ark.) Bar Association; B.S., Arkansas A. & M. College; LL.B., University of Arkansas. Miss Ham holds a B. A. degree from the University of Arkansas and is a third-year student in the School of Law at Fayetteville. Following this composite analysis the Law Review has printed in full a carefully prepared article by Edward M. Penick, of Little Rock, entitled, The Impact of Usury Laws on Banks in Arkansas. Mr. Penick is assistant cashier, Worthen Bank & Trust Co.; member of the Arkansas Bar; B.S., LL.B., University of Arkansas, and a graduate of the Graduate School of Banking, Rutgers University.

them to be applicable only to the isolated case obviously turning upon some remote consideration of equity, were so astutely exploited that it later became necessary to restate the fundamental law with concision calculated to remove misconceptions. The misfortune attending this compulsion may fall heavily upon an individual or a group. So, in dealing with usury and holding contracts void, some one is bound to be hurt.

To hold that all who agree to lend money at ten per cent—when by the terms of repayment more will be earned—have transgressed the constitutional restriction, and at the same time to say that installment payments during a yearly period increase the lender's return—such a conclusion may not in every case be factually correct respecting knowledge; yet without the presumption proof of an intent to overcharge would often be impossible.

We must hold, therefore, that Babcock was not mistaken about the facts, but that if error occurred it was one of law, and he must pay the penalty for the act as distinguished from the purpose.

Reversed.

Justice GEORGE ROSE SMITH not participating.