BROWN *v.* POLK.

5-1828-1829-1830                           322 S. W. 2d 681

Opinion delivered April 13, 1959.

*James P. Baker,* for appellant.

*A. M. Coates,* for appellee.

GEORGE ROSE SMITH, J. We have consolidated these three appeals, which are from separate foreclosure decrees obtained by the appellee Polk in suits involving three different mortgages. The various debtors contend that Polk's claims are usurious and therefore void. The chancellor rejected this contention and entered a foreclosure decree in each case.

We may confine our discussion of the facts to Case No. 5-1828, which is typical of all three appeals. On December 13, 1956, the appellants Isiah Brown and his

wife, to refinance a debt against their forty-acre farm, borrowed $4,000 from Polk. To evidence the debt the Browns executed five promissory notes, payable serially at $800 a year, bearing interest at 8 per cent per annum, and secured by a real estate mortgage upon the farm. When the debtors failed to pay the first annual installment of the principal Polk declared the entire debt due and filed this suit in January, 1958.

The Browns base their charge of usury not upon the real estate mortgage but upon a separate account by which Polk furnished them with cash and supplies during the 1957 crop year. This furnishing account was evidenced by a $550 note which the Browns signed in January, 1957, the amount of the note being the parties' estimate of the total advances that Polk would make during the year. The note recited an interest rate of 10 per cent per annum and was secured by a chattel mortgage on the 1957 crops. As it turned out, the proceeds from the sale of the crops were insufficient to pay the furnishing account in full. When Polk filed his suit to enforce the real estate mortgage he included in his complaint a demand for the balance due on the furnish account, under a clause in the mortgage which made that instrument security for all indebtedness owed by the mortgagors to the mortgagee at the time of foreclosure.

At the end of the 1957 crop year Polk's wife, who acted as his bookkeeper, prepared a written statement of Brown's furnishing account. This statement, dated October 17, 1957, listed Polk's advances from January through September, totaling $1,075.86. Interest was added in the amount of $107.58, which is exactly 10 per cent of the total sums advanced, regardless of when the advances were actually made. In filing his complaint Polk attached a sworn itemized statement of the account, which reflects the same practice of charging interest at the rate of 10 per cent of the total amount advanced.

The appellants are correct in their contention that the three furnishing accounts are usurious. Upon almost identical facts we held in *Brooks* v. *Burgess,* 228 Ark. 150, 306 S. W. 2d 104, that the excessive interest charge

constitutes usury. In the cases at bar when the pleas of usury were filed Polk tried to purge the accounts by recomputing the interest, and in his testimony he attributed the usurious charges to mistakes on the part of his wife. With respect to a similar assertion of mistake we said in the *Brooks* case: ''Here the lender made no effort to compute the interest at the legal rate, nor was there a mathematical error in his calculations. At the most Burgess made a mistake of law, that of thinking that his method of charging interest was lawful. If the usury laws are to mean anything at all it is plain enough that those who engage in the business of lending money must at their peril familiarize themselves with those laws. Otherwise there is nothing to prevent every lender from habitually collecting excessive interest charges, as long as he purges the account of usury when it becomes necessary to go into court.'' That the account in the *Brooks* case extended over a period of eight years, while those now before us relate to a single year, is not a sound reason for making a distinction between the cases. The point is that Polk, through what was at most a mistake of law, sought to collect interest from these appellants at a usurious rate. Indeed, Polk admits that he actually collected excessive amounts of interest from other farmers that he furnished during the same crop year.

Even though the furnishing accounts are unenforceable, the appellants are not entitled to the additional relief they seek. First, it is asserted by their pleadings and intimated by their brief that the invalidity of the furnish accounts also renders usurious the real estate notes and mortgages. This argument is unsound, for the real estate loans and the crop loans were separate and independent contracts, so that the invalidity of the one would not affect the other. *Starling* v. *Hamner,* 185 Ark. 930, 50 S. W. 2d 612; *Hirsch* v. *Perkins,* 211 Ark. 388, 200 S. W. 2d 796; *Hughes* v. *Holden,* 229 Ark. 15, 316 S. W. 2d 710. That the furnishing account balance constituted other indebtedness within the catchall clause in the real estate mortgage did not, in our opinion, establish such

a connection between the two loans as to permit one to contaminate the other.

Secondly, the proceeds from the sale of the crops were applied as payments upon the furnish accounts. It is now contended, on the authority of *Edwards* v. *Rumph,* 48 Ark. 479, 3 S. W. 635, and *Humphrey* v. *McCauley,* 55 Ark. 143, 17 S. W. 713, that when the debtor owes the creditor both a valid debt and a usurious debt, the creditor cannot without the debtor's consent apply a payment to the illegal account. Here, however, it is clear that the debtors consented to the application of the payments, not only because the chattel mortgages contemplate that the proceeds from the crops will be applied to the furnish accounts but also because those mortgages expressly provide that the mortgagee shall have "the exclusive right to apply the net proceeds of sale of all crops" to any indebtedness which the mortgagee may select.

For the error of granting the appellee judgments upon the furnishing accounts the decrees are reversed and the causes remanded for further proceedings upon the real estate mortgages.

HOLT, J., dissents.

J. SEABORN HOLT, J., dissenting. I would affirm the three decrees in their entirety. I agree with the majority that the plea of usury cannot be sustained as to real estate notes, but I do not agree that usury attaches to the three furnish notes in the circumstances here. It appears undisputed that the furnish account notes were due in the case of Alonza Haggins and Ostelle Haggins on November 1, 1957 and in the Brown case on October 15, 1957. None of the notes, involved, called for more than 10% interest and were admittedly valid notes. The evidence shows (and Mr. Polk testified) that for some time he had been in very bad physical condition and that he entrusted his bookkeeping to his wife and he had her prepare a statement in October 1957 of the amount due on each of these furnish notes and on January 4, 1958 Polk filed the present foreclosure suits, and on February 7, 1958 each of the appellants answered with a

general denial not mentioning the defense of usury; but on February 24 thereafter, after receiving appellants statement of the amount due on each note which showed that a usurious charge had been calculated on each of the notes, appellants amended their complaints, alleging usury as a defense. It further appears that when Polk learned that the statements which he had furnished did show usury, he immediately had an accountant prepare new statements, based on the provisions in the notes, and. showing an interest charge claimed by him of less than 10%. The evidence further shows, as I read the record, that there was no intention on Polk's part to charge usury and that when he discovered his wife's mistake, he immediately had it corrected and submitted a corrected statement, as indicated. It is undisputed here also that Polk had never had any business transactions with appellants before. His wife, it appears, had had little, if any, experience in calculating interest and as I read the evidence, she made an honest mistake of fact in her calculations which, when discovered, was promptly corrected. Polk swore positively that he did not intend to charge usury and when he discovered the mistake, he immediately had it corrected.

"To constitute usury there must either be an agreement between the parties by which the borrower promises to pay and the lender knowingly receives a higher rate of interest than the statute allows for the loan or forbearance of money; or such greater rate of interest must knowingly and intentionally be reserved, taken or secured by such loan or forbearance. It is essential, in order to establish the plea of usury, that there was a loan or forbearance of money, and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved. ..................................................Such greater rate of interest must knowingly and intentionally be reserved, taken or secured by such loan or forbearance", *Briggs* v. *Steele*, 91 Ark. 458.

In *Baxter* v. *Jackson*, 193 Ark. 996, 104 S. W. 2d 202, we said: "Our law visits on a lender, who contracts for

usurious interest, however small, a forfeiture of his entire loan and the interest thereon. It follows from the plainest principles of justice that such a defense shall be clearly shown before the forfeiture is declared. Usury will not be inferred from circumstances when the opposite conclusion can be reasonably and fairly reached. It is, therefore, well settled that the burden of proof rests on the party pleading usury, and it must be shown by the 'clear and convincing' rule, and not by the mere 'preponderance' rule. Viewing the evidence in this case accordingly, we are constrained to say that appellee has failed to meet the burden imposed by the rule.'' This holding was reaffirmed in *Commercial Credit Plan, Inc.* v. *Chandler,* 218 Ark. 966, 239 S. W. 2d 1009. I think the present case is on ''all fours'' with our holding in *Cox* v. *Darragh Company,* 227 Ark. 399, 299 S. W. 2d 193. In that case the facts were: ''Mr. Darragh's explanation of what happened is substantially as follows: When Mr. Darragh was told of the transaction he called Mr. Lovett who was cashier of the Commercial National Bank in Little Rock and asked him to figure the interest; Mr. Lovett, who was busy at the time, said he would have his secretary make the calculations and call him in a short while; When the secretary called she gave Darragh the figures which were placed on the back of the note, and; That he assumed the figures were correct and did not check them personally. At the same time, according to Darragh's testimony, he had his secretary insert the above figures in a letter which he had already dictated to appellant. Darragh further testified that the matter of excess interest was not brought to his attention until about the first of December when he promptly wrote a letter to appellant and apologized for the error in the interest calculations, explaining a mistake had been made, and gave him the correct interest calculations. ........................There can be no usury when the amount taken in the contract for interest in excess of ten per cent per annum was reserved through a mistake or ignorance of the fact that it was in such excess. If the lender, by mistake of fact, by error in calculation, or by inadvertence in the insertion of a date, contracts to receive an illegal rate of interest, 'such mistake, error or inadvertence will not stamp the taint of

usury on such engagement, nor cause to be visited upon him, who did not knowingly and intentionally disregard the law in this behalf, the highly penal consequences of an usurious offense'. ..................To constitute usury in this state, there must be an intent to take or receive more than 10 per cent per annum interest''.

I also think that the case of *Brooks* v. *Burgess,* 228 Ark. 150, 306 S. W. 2d 104, relied upon by the majority, is clearly distinguishable upon the facts. In that case, we pointed out that, ''The lender made no effort to compute the interest at the legal rate'', whereas here it is undisputed that immediately after discovering the mistake in his wife's calculations, he employed an accountant who furnished a correct statement which showed, in fact, less than 10% interest. In the Burgess case the lender and the borrowers had been doing business with each other over a period of some eight years and the lender had consistently been charging, over the years, usurious interest. Here, as indicated, Polk had had no other dealings with the appellants and honestly, I think, tried to correct the mistake just as soon as he discovered it. ''Usury is not inferred if the opposite conclusion can be reached'', *Leonhard* v. *Flood,* 68 Ark. 162, 56 S. W. 781. ''The wrongful act of usury will never be imputed to the parties and it will not be inferred when the opposite conclusion can be reasonably and fairly reached'', *Briggs* v. *Steele,* above. Here, as indicated the notes were not usurious in their inception. As I understand our rule, it is that it is only where contracts were usurious in their inception that no subsequent offer to remit the usury can give it validity. ''A suit was brought to enforce a contract, which if enforced according to its terms would result in the exaction of usury; held if the contract was usurious in its inception, no subsequent offer to remit the usury can give it validity'', *Habach* v. *Johnson,* 132 Ark. 374, 201 S. W. 286.