DANIELS *v.* JOHNSON.

5-2514                                                351 S. W. 2d 853

Opinion delivered December 11, 1961.

*William H. Drew,* for appellant.

*D. A. Clarke,* for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellant to cancel a deed (conceded to have been in reality a mortgage) by which she and her late husband conveyed a 43-acre farm to the appellee, T. H. Johnson. The chancellor refused to cancel the instrument, holding that the debts secured by the equitable mortgage were neither usurious nor barred by limitations. This appeal is from a decree settling the accounts between the parties and ordering a foreclosure of the appellee's lien for the balance found to be due.

The proof shows that in 1953 the appellant's husband, T. R. Daniels, was indebted beyond his ability to pay. He owed more than $3,000 upon a mortgage to a federal lending agency. Foreclosure was threatened. He was also obligated upon six promissory notes, of which four were held by the appellee Johnson and the other two by a McGehee bank. Daniels' application to a life insurance company for a refinancing of his mortgage had been refused.

In this situation Daniels sought Johnson's help. On June 1, 1953, Daniels and his wife conveyed their farm to Johnson to enable him to obtain a refinancing of the real estate mortgage. This is the deed that the appellant seeks to cancel. Johnson testified that the agreement was "that I would take a deed to the property and hold it for what he already owed me and what I was to pay the Government" upon the federal mortgage. Johnson also agreed to assume the payment of the two notes held by the bank.

Daniels remained in possession of the land until his death in November, 1958. He made no payments upon the debts, but he did reimburse Johnson for the taxes that Johnson paid yearly. Early in 1958 the appellant

obtained a $5,000 insurance policy upon her husband's life, payable to Johnson, as additional security. After Daniels' death the proceeds of this policy were applied in reduction of the indebtedness. This suit for cancellation was filed in December, 1958.

The appellant makes three separate arguments to support her contention that she, as the surviving tenant by the entirety, should take the land free from her husband's debts.

I.  It is first argued that the appellant did not sign either the deed to Johnson or the promissory notes and that therefore her interest in the land ought not to be burdened with the debts. It is true that the appellant attempted to prove that her name was wrongfully signed to the deed by her daughter, but the decided weight of the evidence supports the chancellor's finding that the appellant's signature is genuine. By joining in the conveyance the appellant subjected her interest in the land to the indebtedness, of which she evidently had knowledge. She is right, however, in insisting that she is not personally liable, as she did not join in the execution of the notes. The chancellor's opinion shows that the court did not intend to impose personal liability upon the appellant, but the decree did embody a money judgment against her. This inadvertent error may be corrected on remand.

II.  It is contended that the appellee's claims are barred by the five-year statute of limitations. Ark. Stats. 1947, §§ 37-209 and 51-1103. A sufficient answer to this argument is that the appellant is not in a position to take advantage of the statute. The title to the land is in the appellee. Even if the debts are barred the appellant cannot invoke the aid of equity without first doing equity herself by recognizing the validity of the appellee's lien. *Sturdivant* v. *McCorley*, 83 Ark. 278, 103 S. W. 732, 11 L. R. A. N. S. 825. Here, as in the case cited, there is no contention that the debtors held the land adversely to the equitable mortgagee. To the contrary, Daniels and his wife repeatedly recognized John-

son's security interest by repaying the taxes and taking out insurance as added indemnity.

III. The third argument is that Johnson's demands are void for usury. At the outset it may be observed that there was no usury in Johnson's original agreement with Daniels. In that transaction Johnson merely agreed that the land should stand as security for the refinanced mortgage debt and the six promissory notes. Those obligations did not bear an excessive interest rate, and there is no suggestion that the rate was increased when the land was conveyed to Johnson as security. Hence the claims were not usurious in the beginning.

A second opportunity for the intrusion of usury may have arisen on March 10, 1954, some nine months after the conveyance. Johnson testified that on that date Daniels agreed to consolidate the debts and pay them all by making ten annual payments of $1,080, which were intended to include both the principal and interest at 10 per cent. As corroborative evidence Johnson produced a vague memorandum, purportedly signed by Daniels, reading essentially as follows: "$1,080.00 per year for 10 years on October 15. Each. T. R. Daniels."

Even if this memorandum should be accepted it does not in itself indicate usury, for the payment of $10,800 in ten equal annual installments would have been slightly less than the permissible maximum charge. The chancellor, however, quite properly rejected the memorandum and instead computed the indebtedness according to the original agreement. The incomplete memorandum is not convincing, especially now that Daniels' death has deprived the appellant of his testimony. It is doubtful if Daniels received any consideration for his supposed agreement to pay something more than he really owed. On the whole record we agree with the chancellor's decision to disregard the 1954 memorandum.

With respect, however, to the two notes that were originally held by the bank Johnson sought by his pleadings and proof to recover interest at a rate in excess of 10 per cent per annum. In his cross complaint Johnson

set out the 1954 memorandum and asked that the indebtedness be computed pursuant to its recitals. During the trial Johnson prepared and introduced in evidence an extended computation in which he undertook to show how the figure of $10,800 was arrived at in 1954. This exhibit does not succeed in confirming the accuracy of the memorandum, for Johnson's computations at the trial result in a total claim that exceeds by $191.06 the memorandum figure of $10,800. Johnson was unable to explain this discrepancy satisfactorily, though he insists that his computations are correct.

This trial exhibit, based upon Johnson's theory of the case, involves usury with respect to the two notes originally held by the bank. They were installment notes, with several monthly payments coming due after June 1, 1953, when Johnson assumed the responsibility for paying the bank. The fixed installments included not only the principal but also interest at the maximum rate of 10 per cent per annum until maturity. It follows that any additional charge before maturity would push the interest rate beyond the legal limit.

Upon assuming the notes Johnson did not go at once to the bank and pay them in full. Instead he paid the installments as they came due during the next nine months; this is clearly shown by his testimony and by the bank's indorsements on the notes. Yet Johnson seeks to recover interest at the rate of 10 per cent per annum from June 1, 1953, upon the full amount of his subsequent payments to the bank. Inasmuch as those payments already included the maximum permissible interest the additional 10 per cent charge is plainly usurious.

The claim upon these two notes should have been rejected. They are separable from the other debts, however; so their invalidity does not vitiate the rest of the claim. *Hynes* v. *Stevens*, 62 Ark. 491, 36 S. W. 689; *Hughes* v. *Holden*, 229 Ark. 15, 316 S. W. 2d 710.

In the main the decree is affirmed. In the particulars mentioned herein it is reversed and the cause remanded for further proceedings.