HALEY *v.* GREENHAW.

5-2711                                   360 S. W. 2d 753

Opinion delivered October 8, 1962.

*W. B. Howard,* for appellant.

*Gerald E. Pearson,* for appellee.

CARLETON HARRIS, Chief Justice. The sole question on this appeal is whether a certain transaction was usurious. The facts leading to the litigation are as follows:

Mrs. Mildred Haley, appellant herein, was granted a divorce from Dr. R. J. Haley on May 23, 1959. Prior thereto, the parties had entered into a property settlement which included, *inter alia,* the provision that the doctor would pay Mrs. Haley $500 in cash and execute a promissory note in her favor in the principal sum of $4,200, payable in

monthly installments of $150 per month. The payments were to commence on June 1, 1959, and continue until the entire balance was paid. The property settlement further provided that Dr. Haley would pay a real estate mortgage in the amount of $7,500, which existed on the home belonging to his wife; further, that he would transfer title to a certain automobile to Mrs. Haley, and would pay any balance due which might constitute a lien on the car. According to appellant, Dr. Haley did not pay the mortgage, did not satisfy the lien on the Cadillac, made only the first two payments on the note, and thereafter left the state of Arkansas, being in Cotton Valley, Louisiana, at the time of the institution of this suit.

Sometime subsequent to the divorce, Dr. Haley married one Christine Knox, and on April 13, 1960, Haley and wife conveyed to Ben R. Scott, approximately 480 acres of land in Greene County, Arkansas, for the consideration of $87,500. Scott and wife, on April 19, 1960, executed to Haley a mortgage on the lands for the amount of $17,500, subject to a lien of the Metropolitan Life Insurance Company for $105,000. The Scotts executed six notes to Haley for the $17,500, payable over a period from December, 1962, to December, 1967, with interest at rate of six per cent per annum. These notes were subsequently assigned by Haley to appellee, George N. Greenhaw, for the sum of $13,500. The notes provided that the makers and endorsers waived presentment for payment, notice of non-payment and protest, and they were endorsed in blank and without qualification. Mildred Haley instituted suit against Haley, Greenhaw and Scott (as garnishees), asking that Greenhaw be declared a trustee of Haley for the notes.

Appellant asserted that "R. J. Haley is liable to the said Greenhaw under his endorsements on said notes and that this transaction amounted to a loan from Greenhaw to Haley of $13,500.00 for which the said Greenhaw was to receive $17,500.00 plus 6 percent interest. Plaintiff says that said transaction was usurious in that it amounted to a taking or an attempting to take interest in excess of 10 percent per annum by Greenhaw from Haley. Plaintiff says that under the constitution and statutes of Arkansas

the attempted transfer of said notes from Haley to Greenhaw is null and void because of usury. By reason of the fact that said transaction is void on the count of usury, the plaintiff has and the court should declare that plaintiff has an equitable garnishment lien upon said notes for the payment of the amount due plaintiff as set out in the original complaint.''

Her prayer for relief was as follows:

''That the court enter an order temporarily restraining and enjoining the said Greenhaw from selling, assigning, hypothecating, collecting the proceeds of, or otherwise disposing of the six notes totaling $17,500.00 wherein Ben R. Scott and Maude Scott are makers, R. J. Haley is payee and R. J. Haley is endorser until the further order of this court and that upon final hearing, the court order the said Greenhaw to deposit said notes in the registry of this court in order that they may be subjected to the claim of plaintiff for collection of the amount due her from the defendant Robert J. Haley. Plaintiff further prays that the court decree that plaintiff has an equitable garnishment lien on the notes in question for the amount due her from the defendant Robert J. Haley. Plaintiff further prays that the court find that the purported transfer of said notes from R. J. Haley to George N. Greenhaw was usurious and void and that R. J. Haley be decreed to be the owner of said notes subject to the claims of plaintiff herein. * * *''

The case proceeded to trial, and after the taking of testimony, the court found:

''That the six notes totaling $17,500 dated April 19, 1960, made by Ben R. Scott and Maude Scott, his wife, to R. J. Haley, which said notes were sold, assigned and delivered to defendant, George N. Greenhaw by the said R. J. Haley for the sum of $13,500.00 paid by defendant George N. Greenhaw, to defendant Robert J. Haley, should be found and declared to be the property of defendant George N. Greenhaw, and that the plaintiff, Mildred Haley, has no right, title, interest or claim or equitable garnishment lien upon or against said notes or the proceeds thereof or the security therefor; that said sale, assignment and deliv-

ery of said notes by R. J. Haley to George N. Greenhaw was a real and *bona fide* sale and purchase and was not made as the occasion, subterfuge or pretext for a loan from George N. Greenhaw to R. J. Haley; and that said transaction was not usurious. * * *''

The complaint was accordingly dismissed, and from the decree embracing such findings, appellant brings this appeal.[1]

For reversal, appellant relies upon three points, but we consider point No. 2 decisive in determining the litigation, and accordingly, there is no occasion to discuss the other points. Appellant's point No. 2 asserts that the transfer of the notes from Haley to Greenhaw constitutes usury, and the transaction is consequently void. Appellee contends, as found by the Court, that the transaction was a *bona fide* sale and purchase, and accordingly, was not usurious.

One thing is certain; there can be no usury unless there is a loan, either directly or indirectly. As stated in 55 American Jurisprudence, Usury, § 18, p. 336:

"It is essential to constitute usury that there must be a loan of money or a forbearance of an existing indebtedness; unless it appears that the transaction in question was in substance a loan or the forbearance of a debt, there is nothing upon which to predicate a charge of usury."

In *Mitchell* v. *Duncan,* 190 Ark. 598, 79 S. W. 2d 997, we said:

". . . to constitute usury, there must be an agreement requiring the borrower to pay and entitling the lender to receive a higher rate of interest than that allowed by statute for the loan or forbearance of money."

Appellant's contention of usury is based on the fact that the notes assigned to Greenhaw by Haley were endorsed in blank, and without qualification. The notes contain the following language on their face: "The makers and endorsers of this note hereby severally waive present-

---

[1] Scott is also technically an appellee, but has no actual interest, his only concern relating to whom the money should be paid to.

ment for payment, notice of non-payment, and protest, and consent to extension of time of payment without notice." Since, under this endorsement, Haley became equally liable with the maker of the note, Scott, appellant contends that the transaction between Haley and Greenhaw became usurious.

The contention is summarized in her brief as follows:

"We now see that when Dr. R. J. Haley endorsed the notes in question to appellee, he undertook to pay the appellee the total sum of $17,500.00 plus 6% interest in return for the advance of $13,500.00. In other words, Haley agreed to pay Greenhaw $17,500 principal plus $5,405.42 (the total of six percent interest computed on the face amount of each note until their respective maturity dates), plus the additional sum of $4,000.00 (the difference between $17,500.00 and $13,500.00). Haley promised to pay $9,405.42 for the use of the money in question, whereas, 10% interest for the period necessary to retire a principal amount of $13,500.00, in accordance with the schedule of due dates on the notes in question would amount to only $6,071.25. Hence, by endorsing the notes, he agreed to pay Greenhaw 10%, plus $3,334.17 in usury."

We have held that waiver of notice and protest accompanied by an unqualified endorsement renders the endorser equally liable to the holder of the note. See *Gibson* v. *Talley,* 206 Ark. 1, 174 S. W. 2d 551. This holding is in conformity with Section 68-811, Ark. Stats. Anno. That section provides as follows:

"All indorsers or assignors of any instrument in writing assignable by law, for the payment of money alone, on receiving due notice of the non-payment or protest of any such indorsed or assigned instrument in writing, shall be equally liable with the original maker, obligor or payee of such instrument, and may be sued for the same at the same time with the maker, obligee or payee thereof, or may be sued separately."

Here, of course, the notice of non-payment and protest have been waived. Appellant points out that by the en-

dorsement, Haley has made himself *primarily[2] and unconditionally* liable for the repayment of the money; that his liability is not secondary, and conditioned upon the failure of Scott to pay.

There is a divergence of authority on the question of whether the discount of a note with general endorsement for a sum in excess of interest allowed by law, constitutes usury. Both appellant and appellee cite authority in conformity with their respective contentions. However, we are of the opinion that the transaction must be viewed from "its four corners" in determining whether this transaction was usurious. Under the facts in this case, we are not willing to say that, *as a matter of law,* the transaction between Haley and Greenhaw amounted to usury.

To so hold, would have the same effect as saying that a note bearing ten per cent interest can never be sold at a discount unless the seller sells without recourse. Such a holding would, of course, seriously curtail commerce, and would impair the negotiation and sale of commercial paper. Certainly, negotiable notes and mortgages are subjects of *bona fide* sales in the usual course of business, and very frequently these sales are at a discount. Probably, most often the sales are with recourse, for many business concerns would not purchase the paper otherwise. We see no reason why an actual and *bona fide* sale and purchase of paper at a discount should be hampered by the ruling that appellant seeks.

The penalty for a usurious transaction is indeed heavy, and should therefore be established by clear and convincing evidence. A matter of some similarity existed in *Webster* v. *Sterling Finance Company* (Mo.), 195 S. W. 2d 509, in that it involved the assignment of notes from one company to another, and posed the question of whether the transaction constituted a sale or a loan. From the opinion of the Missouri Supreme Court:

---

[2] While primarily liable in the sense that, in case of default by Scott, Greenhaw could immediately institute suit against Haley alone for collection of the note, it must be remembered that Haley, in such event, could institute suit against Scott for the amount paid, and so, as we generally use the term, Haley, in reality, is not primarily liable. The primary maker of a note, of course, has no recourse against anyone.

"Were the transactions as to the alleged sold installments *sales* as defendant contends, or was each sale agreement a mere camouflage to disguise a usurious loan, as plaintiff contends? It is true that 'a loan may be cloaked in the outward form and appearance of a purchase, in which case that will not change the substance of the transaction nor hide the usury. But if there is a real and *bona fide* purchase, not made as the occasion or pretext for a loan, the transaction will not be usurious even though the sale be for an exorbitant price.' * * *

"The law will not tolerate any camouflage disguising a usurious transaction to make it seem innocent. 'The law looks at the nature and substance of the transaction, and not to the color or form which the parties in their ingenuity have given it. No imaginable act or contrivance to cover up and conceal the usury will avail the parties. They will not be permitted successfully to evade the provisions of the statute by any conceivable scheme or expedient. The courts will follow them through all their shifts and devices, and ascertain the true character and design of the transaction. And if upon such investigation, it appears that there was in substance a loan at an illegal rate of interest, no matter what form or shape the contract has been made to assume, it will be declared to be usurious, and the proper remedy applied.' * * *

"We do not find any substantial evidence in the record tending to show that the transaction stated in the sale agreements were loans and not sales."

In the case before us, there is not one single shred of evidence that would indicate that the Haley-Greenhaw transaction was actually a loan, rather than a sale. For that matter, it does not appear that there was any attempt to conceal any part of the transaction. Appellant is apparently of the view that Haley's sole purpose was to denude himself of his property in order to avoid paying the amount of money due her, but the record reflects that the notes (as well as the assignment of the second mortgage on the lands) were not transferred to Greenhaw until approximately eleven months after appellant and Dr. Haley were divorced. At any rate, we repeat that there is abso-

lutely no evidence to indicate that the transaction was actually a loan, rather than a sale, or that Greenhaw had any intention to do other than purchase the notes at a discount. The language of the written assignment, delivered with the notes, provides that Haley and wife "grant, bargain, sell, assign, transfer, set over, deliver, and convey unto George N. Greenhaw . . . all of their right, title and interest in and to one certain mortgage * * * together with the notes, debts, and claims secured by said mortgage. * * *" Of course, this language does not conclusively mark the transaction as a sale, but as previously stated, the burden is upon appellant to establish usury. As was said in *Hare* v. *General Contract Purchasing Corporation,* 220 Ark. 601, 249 S. W. 2d 973, "Therefore, when the intention is not apparent, it is a question for the jury to determine whether it was a *bona fide* credit sale, or a device to cover usury." Likewise, we are of the opinion that whether the transaction between Haley and Greenhaw constituted a sale or a loan was a question of fact for the trial court to determine. That court found same to be a *bona fide* sale, and we think, and hold, that this finding was in accord with the preponderance of the evidence.

Affirmed.