582

## ARKANSAS REAL ESTATE CO., Inc. v.
## H. F. BUHLER et al

5-5027                              447 S. W. 2d 126

Opinion delivered November 10, 1969

[Rehearing denied December 15, 1969.]

*L. Gene Worsham,* for appellant.

*Lester & Shults,* for appellees.

LYLE BROWN, Justice. H. F. Buhler and wife were awarded judgment against Arkansas Real Estate Company, Inc. on four notes secured by mortgages on lands in Saline County. The judgment was resisted on the ground that the notes were usurious. It was contended that the debt sued on was represented originally by a single note which was usurious; and that these four settlement notes were tainted with the usury from the original note. Those contentions were rejected by the trial court and Arkansas Real Estate appeals.

We first turn our attention to what we shall call

the original note. Arkansas Real Estate Company, Inc. is a domestic corporation through which R. M. Traylor has for a number of years dealt in the purchase, sale, and development of bauxite properties in Saline County. In 1948 Traylor evidently interested Buhler in participating in some of the bauxite ventures headed by Traylor. In that year the parties executed a contract evidencing their first substantial venture together. As a result of that agreement, Buhler obtained title to some forty-six acres in Saline County, and the refusal of joining with Traylor "on a 50/50 basis in connection with any options covering bauxite lands which you may negotiate in the State of Arkansas for a period of twelve months . . ."

The two men subsequently participated in a number of bauxite transactions, presumably initiated by the described contract. Buhler's participation consisted of advancing funds as Traylor acquired options. So far as we can discern from the record, Buhler kept an account of his advancements on a ledger in his office, and Traylor would from time to time make payments thereon. By 1954 Buhler presumably decided to reduce the account to a note. According to the record, Buhler supplied Traylor with an itemization covering twenty-five separate cash advancements in 1952 and 1953, with an additional "$1,000 from previous account." That itemization is typed on one sheet and totals $67,268.50. It is possible that the items actually total $66,268.50. That is because one of the items appears to have been erased and we cannot state with certainty whether the altered item is $250 or $1,250.

Mr. Traylor does not agree that he then owed the total amount of the account stated by Buhler. On the reverse side of the account are a number of figures in Traylor's handwriting which Traylor says arose out of conferences between him and Buhler. Among other things are listed certain credits which Buhler is said to have concurred in. Those credits, if correct, would have

reduced the account to $50,150. Traylor claims Buhler insisted on adding $5,000 interest to that amount, plus Buhler's contribution to the purchase of a truck, raising the total debt to $56,900. Then, so Traylor testified, Buhler added $10,000 as another item of interest. The final figure, according to Traylor, was rounded off at $67,000. That is the face amount of the original note dated October 6, 1954. The note was drafted to become due January 1. 1957, to draw five per cent interest until maturity and ten per cent per annum thereafter.

With respect to the original note, there are two features which should here be related. First, there is a handwritten notation in blue ink at the bottom of the typewritten note, which reads: "$10,000 of this note is interest; $57,000 is principal." Then opposite that notation in green ink is written, "O. K. H. F. Buhler." It is evident that Buhler's signature is genuine. Secondly, Traylor insists that he actually did not owe the money represented by the note; that he executed it as a favor to Buhler who insisted thereon because, so Traylor testified. Buhler needed the money; that the entire venture was that of a partnership in which Buhler agreed to advance three-fourths of the capital and Traylor agreed to advance one-fourth plus his services; and that upon the sale of a valuable holding which would have aggregated $300,000, each party was to have been remunerated.

Traylor was the only witness who testified as to the transactions we have described. Buhler was called; he testified as to his ownership of the notes sued upon; he was asked to identify the handwriting, "O. K. H. F. Buhler," which he was unable to do (his attorney agreed that it was Buhler's signature); he was asked if he remembered the particulars surrounding the drafting and execution of the original note, to which he replied that his memory was failing and he could not recall them. It was shown that Buhler was 88 years of age at the time of the trial and he testified that his memory was "almost gone." Appellant did not challenge that asser-

tion and counsel admirably restricted his questioning accordingly.

In 1966, which was some considerable time prior to the filing of the instant case, Buhler sued Arkansas Real Estate Company on the original note. That suit was settled by Buhler and Traylor without benefit of counsel. In that settlement Buhler took the four notes forming the basis of this litigation.

Now back to the original note. Traylor points up these arguments to support his theory that the original note was usurious:

(1)  The uncontradicted testimony, supported by documentary proof, shows usury;

(2)  Buhler's signature on the notation of the original note proves usury;

(3)  Two letters written by Buhler demonstrate usury; and

(4)  When the original note was sued on in Pulaski County, it was exhibited with the complaint, but the handwritten notation, "$10,000 of this note is interest; $57,000 is principal. O. K. H. F. Buhler," was not copied; and that omission lulled Traylor into not asserting a claim of usury as a defense to the suit on the original note.

The four contentions listed will be treated in paragraphs correspondingly numbered.

(1)  The testimony and documental proof of usury. We presume appellant is referring to the testimony of Traylor. He purported to relate, mostly from memory, a multitude of transactions between the parties which covered a long period of years. Much of that testimony is inarticulate. It is in contradiction of essential written

agreements between the parties. For example, the 1948 contract called for advancement by Buhler of fifty per cent of the cost of acquired options, whereas Traylor insists that they verbally agreed to change Buhler's contribution to seventy-five per cent. Again, Traylor insisted that the original note for $67,000 did not in fact represent an indebtedness to Buhler; he says he executed the note purely as an accommodation to a man who insisted he was in need of money. Additionally, on an obligation which he said he did not owe, an endorsement of payments on that note shows that over a period of eight years Traylor paid a total of $31,000 on the debt. Finally, Traylor tried to eliminate from the written account, which formed the basis of the original note, some $13,-000 in credits. His testimony in that connection was unsupported by receipts or other written items.

(2) and (3). Buhler's signature on the notation of the original note, corroborated by two letters written by Buhler (so Traylor asserts), demonstrates usury. We have previously referred to the notation on the bottom of the original note. Of course that notation speaks for itself and it is logical to argue that it speaks the truth. On the other hand, Buhler supplied an itemized account which totaled, in round numbers, $66,000 or $67,000, and the chancellor apparently concluded that the itemized account represented a true statement of the indebtedness. Additionally, one of the letters to which Traylor refers is dated in December 1958, from Buhler to Traylor. Among other things, that letter contains this statement:

> You got the $67,000 without adding any interest, in about four months, $5,000 and $10,000 at a time, turning in names and land descriptions that could not be found. I, of course, permitted you to say that $10,000 of it was interest in order to get you to make the note. You naturally preferred to keep it like it had been for the last 10 previous years, in and out, without any accurate account, or without any definite time to pay except on small amounts.

In a letter dated April 1964, Buhler to Traylor, the latter attaches considerable significance to this statement. "That is separate from the $67,000, on which I gave you $50,000, not in notes, or questionable stocks or bonds without value, but in Uncle Sam's kind of money." Traylor would have us conclude that from the quoted statement it is conclusive that the original note represented an advancement by Buhler of only $50,000. His argument has some merit but is certainly not conclusive in the face of the array of other evidence to the contrary.

(4) A copy of the original note was attached to the complaint in the first suit; and failure to copy thereon the handwritten notation respecting interest misled Traylor (so he contends) and caused him to overlook then asserting usury as a defense. Traylor conceded that he knew there was an invalid note outstanding between the two men but explained that the lapse of time caused him to forget that this was the note which contained a $10,000 usurious charge. His actions regarding the "usurious" note were inconsistent with the assertion at the trial. For example, he was told by Buhler, by letter in 1958, of Buhler's version of the mention of interest on the bottom of the note, namely that he permitted Traylor to say that "$10,000 was interest in order to get you to make the note." After that communication, Traylor made eight payments on the note totaling $31,000. Another factor which could have impressed the trial court; Traylor came into possession of the original note at the time he delivered the four notes sued upon herein; it was eighteen months thereafter before he raised the allegation of usury. Apparently the trial court found it difficult to conclude Traylor's point (4) was tenable. Under the circumstances of the case we are certainly unable to find fault with that conclusion.

In his effort to establish usury, Traylor carried a heavy burden. The stated account, prepared by Buhler, set the stage for the execution of the original note. The

588

total of that account was very close to $67,000, too close to sustain usury if it was correct. The formal note was not on its face usurious. Traylor proceeded to attack the account stated by parol evidence of credits totaling several thousand dollars. Finally, so he says, the correct amount was ballooned by adding two items of interest totaling $15,000. In the face of the two cited written instruments, Traylor was required to show clearly that the transaction was usurious. *Briant* v. *Carl-Lee Brothers*, 158 Ark. 62, 249. S. W. 577 (1923). Our usury law is a penal statute and when a questioned instrument is on its face not usurious "the plainest principles of justice" require that the defense of usury be clearly shown. *Smith* v. *Mack,* 105 Ark. 653, 151 S. W. 431 (1912).

The chancellor specifically found that Traylor failed to establish that the original note was usurious and we are not willing to say that finding was erroneous.

Affirmed.