FIRST NATIONAL BANK OF MEMPHIS, MEMPHIS, TENNESSEE *v.* C. F. THOMPSON

5-5402                                    463 S. W. 2d 87

Opinion delivered February 8, 1971

*Clark, Clark & Clark,* for appellant.

No Brief filed for appellee.

John A. Fogleman, Justice. The chancery court held a certain conditional sales contract, signed by appellees C. F. Thompson and wife and assigned to appellant, void for usury. Appellant argues that the court erred by considering the date of the conditional sales contract as the proper date from which interest should accrue in testing for usury, rather than the earlier date of an alleged contract between the parties.

Appellee C. F. Thompson testified that he entered into a contract with Coffey-Clifton, Inc. for the purchase of a mobile home on April 11, 1968. He stated that the mobile home was a special order for him. The total price was $13,881, of which Thompson paid $7,000 in

cash on the date of this contract.[1] The balance of $6,881 plus insurance premiums of $87.50 and interest was to be paid on November 1, 1968.

A memorandum of the contract bearing date of April 11, 1968, prepared by Coffey-Clifton, Inc. and signed by its president was furnished C. F. Thompson. It was entitled "Standard Mobile Home Invoice and Bill of Sale." It recited the terms of the agreement and showed a balance to be financed of $6,968.50 "plus 7% interest maximum," through First National Bank, Memphis, Tennessee. It also noted that payment due November 1, 1968, was principal plus 7% interest.

The mobile home in question was in the process of manufacture on the date of this memorandum. It was completed and delivered to Thompson in June, 1968. According to Thompson, he was asked to, and did, sign a conditional sales contract quite some time before the unit was delivered. Coffey said that this instrument created a security interest when the unit passed from his hands, and that this form was required by the bank. This document was dated June 25, 1968. Appellee mailed the contract to appellant on June 25, 1968, and the bank then remitted the unpaid balance of $6,968.50 to Coffey-Clifton. Thompson admitted that none of the indebtedness had been paid. When no payment was made, appellant instituted this foreclosure action.

John Coffey of the selling company testified that he was shopping on April 11 for a bank to purchase this contract when appellant agreed to "make the loan." Appellant at that time furnished him with a figure of $322 time differential to be inserted in the contract and added to the unpaid balance. It is conceded that this differential is interest. Coffey's testimony that the interest

---

[1] There is some conflict in the evidence on this amount. The first memorandum of the contract recited a cash payment of $7,000. Thompson testified that he paid roughly $7,300. The document assigned to appellant recited a cash payment of $7,461.68. However, there seems to be no dispute about the amount of the principal balance.

was discussed with Thompson on April 11 is not disputed. Interest calculations stipulated by the parties show clearly that the interest charge amounted to more than 7%, but less than 10%, per annum if calculated from April 11 to November 1.

We cannot say that the chancellor's finding is against the preponderance of the evidence. Salient factors leading to that conclusion are:

1. The bill of sale was not signed by Thompson on April 11, nor was there any other evidence that he agreed to pay interest from that date.

2. The "Mobile Home Conditional Sales Contract" upon which this action was based was prepared by the seller upon a standard form prescribed by appellant and on which its name is printed.

3. The first sentence of the conditional sales contract begins: "The undersigned Buyer (whether one or more), having been quoted a time price and a lesser cash price, and having elected to buy the mobile home for the time price as hereinafter set out, does hereby buy, and the undersigned Seller does hereby sell, on a time price basis, * * *"

4. The amount of the time price differential was fixed by appellant at a figure in excess of 7%, even if calculated from April 11.

5. Thompson was required to sign this contract before delivery of the mobile home. Coffey, a witness called by appellant, testified that it was signed by Thompson on April 11, but that the time differential balance was not filled in until later.

6. No money was advanced by the bank until the contract was mailed to it by Coffey-Clifton on June 25, 1968, when the bank paid Coffey-Clifton the exact amount of the balance of the selling price.

7. The contract was assigned by the seller, without recourse.

This court issued its caveat that transactions substantially similar to this might be subjected to the taint of usury if entered into after the opinion in which it was pronounced became final. *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973. In that case the caveat stated that when a seller transfers title documents to a company engaged in purchasing such documents at a price which permits the transferee to obtain more than a return of 10% on its investment, then a question of fact arises as to whether the seller increased his cash price with reasonable assurance that he could so discount the paper to such company. If so, the transaction is, in substance, a loan, subject to attack for usury. The supplying of a set of forms and a schedule for credit price increases without more tends to show that the seller had such assurance. We have unfalteringly applied the principles then expressed. The chancellor was justified in finding that the transaction was a loan by appellant to Thompson.

Any sum added to the cash price as interest, differential, or carrying charge in excess of 10% per annum on the sale price renders a contract void. *Sloan* v. *Sears, Roebuck & Co.*, 228 Ark. 464, 308 S. W. 2d 802. In the absence of any valid agreement between appellant, as lender, and Thompson, as borrower, for the payment of interest from an earlier date, or other considerations not pertinent here,[2] this transaction must be tested for usury by calculating the allowable rate from the date of the disbursement of the loan, which is also the date of the instrument and the date of its assignment. See *Brown* v. *Polk*, 230 Ark. 377, 322 S. W. 2d 681.

Appellant argues that the requisite intent to exact an excessive rate of interest was not shown. This argument is sufficiently answered by the conclusive legal presumption that, in the absence of fraud or mutual mistake, the lender is presumed to know the consequences of its adding an illegally excessive charge. *Sunderland* v. *Babcock*, 224 Ark. 444, 277 S. W. 2d 74.

[2]See, e. g., *Matthews* v. *Georgia State Savings Assn.*, 132 Ark. 219, 200 S. W. 130, 21 A. L. R. 789; *McDougall* v. *Hachmeister*, 184 Ark. 28, 41 S. W. 2d 1088, 76 A. L. R. 1463.

There is no evidence of fraud or mistake here. Furthermore, no evidence is offered from which the court might have found that there was an excusable error in the calculation of the charge, so the trial court was justified in deducing that any mistake of appellant lay in its belief that the charge was lawful. This is a mistake of law from which it cannot be relieved. See *Brooks* v. *Burgess,* 228 Ark. 150, 306 S. W. 2d 104; *Holland* v. *C. T. Doan Buick Co.,* 228 Ark. 340, 307 S. W. 2d 538. Such a mistake might well have been attributable to the fact that such a differential appears to be lawful in Tennessee, the state of appellant's domicile [see *Bank* v. *Mann,* 94 Tenn. 17, 27 S. W. 1015, 27 L. R. A. 565 (1894)], where it seems that the penalty for usury is loss of excess interest only. Tenn. Code Ann. § 47-14-112 (Repl. 1964). We have specifically held that, under such circumstances, the error in mathematical calculations cannot be forgiven and the taint of usury removed, even by allowing the lender to repay the overage. *Ford Motor Credit Co.* v. *Catalani,* 238 Ark. 561, 383 S. W. 2d 99.

Appellant mentions that the chancery court awarded the Thompsons damages and recission of the contract on their cross-complaint against Coffey-Clifton. They seem to be arguing that there is an inconsistency in that holding and the finding that the contract is void. The relief granted by the court's decree against appellant merely dismisses its complaint for want of equity. Be that as it may, Coffey-Clifton has not appealed from the decree, and we have demonstrated our reasons for not finding the court's holding as to usury to be against the preponderance of the evidence.

The decree is affirmed.