Lloyd CAGLE et ux *v.* BOYLE MORTGAGE COMPANY

76-272                                    549 S.W. 2d 474

Opinion delivered February 14, 1977
(Division I)

Rehearing denied April 11, 1977
(En Banc)

438

*R. David Lewis,* for appellants.

*Spitzberg, Mitchell & Hays,* for appellee.

FRANK HOLT, Justice. In this foreclosure action brought by the appellee, the appellants interposed the defense of usury. The chancellor found the transaction between the parties was free of usury and, therefore, appellee was entitled to foreclosure. We must agree with appellants' contention that the court erred in so finding.

In December, 1973, the appellants signed a construction note and mortgage in the amount of $28,000, bearing 10% interest per annum, in favor of appellee for the purpose of financing the construction of a residence. Advances or "draws" totaling $22,180 were made from February, 1974, through September, 1974. Subsequently, appellants sought to cancel the note and mortgage in the local federal court on the basis of usury. Appellee answered and then brought this action in the state court alleging that, despite demand for payment, the balance of $22,180 was due plus interest in the amount of $2,715.81, which represents the legal rate of interest. Appellants defended on the basis that the note and mortgage were usurious since the monthly statements, following advances on the loan, showed that appellee had

monthly which resulted in exceeding the legal rate of 10% per annum simple interest. Further, the monthly statements reflected that appellee charged a daily rate of interest which also resulted in exceeding the legal rate of interest. Admittedly, the note and mortgage are not usurious on their face. No payment was ever made on the indebtedness.

Appellee is a Tennessee corporation which operates in Arkansas and Mississippi with corporate offices in Memphis. Its Arkansas manager, who negotiated the loan with appellants, testified there was never any intention to charge any interest on the loan in excess of the legal rate of interest. Appellant Lloyd Cagle responded by exhibits to his testimony which show that the appellee mailed computerized monthly statements to him from its Memphis office. These exhibits on their face show, according to the balance and interest due, that a usurious rate of interest was being charged. It appears from appellants' computation that these exhibits reflect a compounding of interest which yields 10.4712% interest per annum. The exhibits further reflect that by the use of a daily interest factor based on a 360 day year times 365 produces an annual interest rate of 10.139% interest per annum. It appears that when both of these methods are used together it produces a simple interest rate of 10.6235296% per annum. Appellant Cagle testified that he "suspected" a usurious rate was being charged and complained to the Arkansas manager, who replied that he "had nothing to do" with computing the interest and "it all came out of Memphis." The appellee's manager testified that these computer print-outs were inaccurate and eventually he notified the Memphis office to discontinue them. It appears that this occurred about the time these parties were involved in litigation in federal court which, as stated, preceded briefly this state action. He admitted the print-outs computed the interest monthly and the computer was programmed to compound interest on all notes whether in Arkansas or Tennessee. He could not say whether the interest was computed on a monthly or daily basis. It appears undisputed that in a companion transaction the appellee collected a note secured by a mortgage from appellants based upon a computerized monthly statement as here.

Appellee argues that the requisite intent to collect a usurious rate of interest is not shown since the note on its face recites a valid rate of interest, no payment was ever made and the computer print-outs were erroneous. We are not convinced by this argument. There is a "conclusive legal presumption that, in the absence of fraud or mutual mistake, the lender is presumed to know the consequences of its adding an illegally excessive charge." *First National Bank* v. *Thompson*, 249 Ark. 972, 463 S.W. 2d 87 (1971). Here there is no evidence of fraud presented and although a mistake in the computer print-out is asserted, it is certainly not a mutual mistake of the parties. We have also said that mere errors in mathematical calculations are not necessarily forgiven, thereby removing the taint of usury. *Ford Motor Credit Co.* v. *Catalini*, 238 Ark. 561, 383 S.W. 2d 99 (1964); and *First National Bank* v. *Thompson, supra.*

Here it is also argued that the lender merely made a mistake of fact as to the calculations of interest and since the action is not based on a usurious rate of interest, the note and mortgage should be enforced according to its provisions. We are not persuaded by this argument. *Brooks* v. *Burgess*, 228 Ark. 150, 306 S.W. 2d 104 (1957). There we reiterated:

It is not necessary for both parties to intend that an unlawful rate of interest shall be charged, but if the lender alone charges or receives more than is lawful, the contract is void.'

Here the lender's monthly statements showed a computation of interest above the legal rate of interest. It appears it was not until litigation ensued that the appellee sought to collect its loan free of usury. We are not convinced that appellee's monthly statements were mere mathematical errors in calculations. It is significant that, in a companion transaction with the appellants, the appellee made a loan to them and collected the principal and interest on monthly computerized statements as here. We must hold that the evidence is clear and convincing that the transaction was usurious.

Reversed and remanded for entry of a decree cancelling the note and mortgage.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and BYRD, JJ.

## Dissenting Opinion on Denial of Rehearing

JOHN A. FOGLEMAN, Justice, dissenting. I am unable to understand how the court could reverse the chancellor's finding that the obligation of appellants to appellee was free of usury. This was a finding of fact. Appellants had the burden of demonstrating error in the holding of the trial court. *Hendrix v. Hendrix*, 256 Ark. 289, 506 S.W. 2d 848; *Holt v. Holt*, 253 Ark. 456, 486 S.W. 2d 688; *Poindexter v. Cole*, 239 Ark. 471, 389 S.W. 2d 869. In this case, this was a very heavy burden, indeed.

The sole point for reversal was that the court erred in finding that the note and mortgage-executed by appellants were free of usury. Admittedly, they are not usurious on their face, and no payment was ever made on them, or the indebtedness they represented and secured. The only basis for contending that the transaction was usurious was the fact that certain computer printouts showed interest which had apparently been so calculated as to be in excess of the legal rate and in excess of the rate stated in the note and mortgage. The court has seen fit to reverse the trial court's holding on the basis that this was not the result of a mere mathematical error, and, by some means, in spite of the chancellor's finding, hold that the evidence to show usury was clear and convincing, an action so rare as to almost be novel, and which should be taken with considerable reluctance.

What we said in *Brown v. Central Arkansas Production Credit Association*, 256 Ark. 804, 510 S.W. 2d 571, applies in this case, i.e.,:

> The note was not usurious upon its face, so the burden of proving usury rested upon appellants. *Hayes v. First National Bank of Memphis*, 256 Ark. 328, 507 S.W. 2d 701; *Peoples Loan and Investment Company v. Booth*, 245 Ark. 146, 431 S.W. 2d 472. The issue must be determined as of the date of the contract involved and not by subsequent events. *United-Bilt Homes, Inc. v. Teague*, 245 Ark.

132, 432 S.W. 2d 1. In order for a charge to constitute usury, there must have been an intention on the part of the lender to take or receive more than the maximum legal rate of interest. *Ragge* v. *Bryan,* 249 Ark. 164, 458 S.W. 2d 403. In an effort to meet this burden, Henry Brown testified that he was charged $2,019 interest when he made the $6,000 payment. In determining whether this charge was usurious, all attendant circumstances germane to the transaction should be taken into consideration. *Textron, Inc.* v. *Whitener,* 249 Ark. 57, 458 S.W. 2d 367; *Ragge* v. *Bryan,* supra. Assuming, without deciding, that appellee's application of the $6,-000 payment could have rendered the transaction usurious, it would have been error for the chancellor to have excluded evidence as to the status of Brown's indebtedness to appellee at the time the note was executed and the loan approved and appellee's reasons for applying the payment as it did. See *Nineteen Corporation* v. *Guaranty Financial Corp.,* 246 Ark. 400, 438 S.W. 2d 685.

We likewise disagree with appellant's contention that the chancery court erred in its holding that the note and mortgage should not be cancelled for usury. The intention to charge a usurious rate of interest will never be presumed, imputed or inferred where an opposite result can be reached. *Hayes* v. *First National Bank of Memphis,* 256 Ark. 328, 507 S.W. 2d 701. To constitute usury, there must have been an intention on the part of the lender to take or receive more than the legal rate. *Ragge* v. *Bryan,* 249 Ark. 164, 458 S.W. 2d 403. When the questioned instrument is not usurious on its face, this intent must be clearly shown. *Arkansas Real Estate Company* v. *Buhler,* 247 Ark. 582, 447 S.W. 2d 126. The evidence in this case falls far short of showing such an intention.
***

Since there was nothing suggestive of an excessive interest charge in the agreement, appellant bore the burden in the trial court of proving usury by clear, satisfactory, and convincing evidence, not a mere preponderance. *Arkansas Real Estate Co.* v. *Buhler,* 247 Ark. 582, 447 S.W. 2d 126; *Haley* v. *Greenhaw,* 235 Ark. 481, 360 S.W. 2d 753; *Commercial Credit Plan, Inc.* v. *Chandler,* 218 Ark. 966, 239 S.W. 2d 1009; *Baxter* v.

*Jackson*, 193 Ark. 996, 104 S.W. 2d 202; *Citizen's Bank* v. *Murphy*, 83 Ark. 31, 102 S.W. 697. The plainest principles of justice require such a quantum of evidence because of the extremely severe penalty for usury in Arkansas. *Arkansas Real Estate Co.* v. *Buhler*, supra; *Haley* v. *Greenhaw*, supra; *Baxter* v. *Jackson*, supra.

The intent to charge usury will not be inferred or imputed if the opposite result can fairly and reasonably be reached. *Baxter* v. *Jackson*, supra; *Hayes* v. *First National Bank of Memphis*, 256 Ark. 328, 507 S.W. 2d 701; *Peoples Loan & Investment Co.* v. *Booth*, 245 Ark. 146, 431 S.W. 2d 472. In order to constitute usury, it must be shown by clear and satisfactory evidence that there was an intent knowingly to take excessive interest. *American Farm Mortgage Co.* v. *Ingraham*, 174 Ark. 578, 297 S.W. 1039.

To constitute usury, where there is no agreement by which the borrower promised to pay, and the lender knowingly receives a higher interest than the statute allows, the greater rate of interest must be knowingly and intentionally reserved, taken or secured. It is essential that there be an intent or agreement to take unlawful interest *and* such unlawful interest must be *actually* taken, received or reserved. *Armstrong* v. *McCluskey*, 188 Ark. 406, 65 S.W. 2d 558; *Briant* v. *Carl-Lee Bros*. 158 Ark. 62, 249 S.W. 577. This rule was first stated in *Briggs* v. *Steele*, 91 Ark. 458, 121 S.W. 754, thus:

> To constitute usury there must be either be an agreement between the parties by which the borrower promises to pay, and the lender knowingly receives, a higher rate of interest than the statute allows for the loan or forbearance of money, or such greater rate of interest must be knowingly and intentionally "reserved, taken, or secured" for such loan or forbearance. It is essential, in order to establish the plea of usury, that there was a loan or forbearance of money and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved.

The quotation has been repeated many times. See e.g., *Brittian* v. *McKim*, 204 Ark. 647, 164 S.W. 2d 435; *Universal CIT*

*Credit Corp.* v. *Lackey,* 228 Ark. 101, 305 S.W. 2d 858. There has been no departure from it.

The rule is incorporated into the statute governing such contracts. It reads:

> All bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatever, whereupon or whereby there shall be reserved, taken or secured, or agreed to be taken or reserved, any greater sum, or greater value for the loan or forbearance of any money, goods, things in action, or any other valuable thing than is prescribed in this act [§§ 68-602 - 68-604, 68-608], shall be void.

The language of the statute and our decisions have been so applied that where there is no agreement to pay interest at an excessive rate, or the excessive charge is not incorporated into the contract, the lender must knowingly receive some part of the excessive interest. See *Garvin* v. *Linton,* 62 Ark. 370, 35 S.W. 430, 37 S.W. 569; *Jones* v. *Phillippe,* 135 Ark. 578, 206 S.W. 40.

In *Brown* v. *Polk,* 230 Ark. 377, 322 S.W. 2d 681, crop proceeds were credited on the account on which usurious charges had been made. In *Brooks* v. *Burgess,* 228 Ark. 150, 306 S.W. 2d 104, the account ran over a period of nine years and there were payments from time to time, as indicated by the fact that the statement of account showed 640 items of debit and credit over the term, during which interest was added to the account on the basis of a flat 10% charge even if the borrower had the use of an advance for as little as one month at the time of the advance. In *Redbarn Chemicals, Inc.* v. *Bradshaw,* 254 Ark. 557, 494 S.W. 2d 720, the account extended over a period of many years, during which the creditor sent monthly statements showing the previous balance and debits and credits during the month, with a finance charge added. The language in the opinion in that case points up the distinction between *Brown, Brooks, Redbarn* and this case. We said:

> We are not impressed by the suggestion that the

usurious charge was made by Redbarn unilaterally, without the debtors' knowledge or acquiescence. The unpaid account was of long standing. For more than two years its amount was in excess of $10,000. There is no suggestion in the record that the Bradshaws expected to be financed by Redbarn without any interest charge. According to the proof, monthly computerized statements, including a service charge, had been sent by Redbarn for a full year before the excess charge was imposed. After the date of the excessive charge the Bradshaws were credited with seven payments upon the account, the largest being a $3,000 payment on February 11, 1971. On November 2, 1971, in the month before Redbarn filed this suit, Bradshaw Jr., wrote a letter in which he recognized his debt of $11,479.91 to Redbarn and outlined the steps that he was taking to make payments on the debt. Thus the trial court was justified in concluding from the overwhelming weight of the evidence that the Bradshaws were aware of the monthly finance charges, that they voiced no objection to those charges, and that they made payment upon the account with knowledge that the charges were included.

On the other hand, a wrongful demand for excessive interest does not constitute usury where there is no agreement to pay it. *Mitchell* v. *Duncan,* 190 Ark. 598, 79 S.W. 2d 997. This rule is not impaired in any way by *Daniels* v. *Johnson,* 234 Ark. 315, 351 S.W. 2d 853, where the creditor actually sued to recover the usurious interest, or by any other decision.

This case does not remotely approach the situation in *First National Bank of Memphis* v. *Thompson,* 249 Ark. 972, 463 S.W. 2d 87, where the interest was a time price differential added to the sale price of a mobile home, by which the "interest" provided for was excessive because it was calculated for a longer period of time than was proper. This usury was in the original transaction, and, in effect, was charged or reserved in the inception of the transaction. Thus, there was an agreement by the purchaser (borrower) to pay interest at an excessive rate.

This is another reason that appellant has failed to show

that the transaction is usurious. The test for usury is whether the total amount the borrower is required to pay *over the entire term of the loan* exceeds the principal received, plus interst at 10% per annum from the date of receipt. *Davidson v. Commercial Credit Equipment Corp.*, 255 Ark. 127, 499 S.W. 2d 68; *McDougall v. Hachmeister*, 184 Ark. 28, 41 S.W. 2d 1088, 76 ALR 1463. I find no evidence that indicates that there was usury on the basis of this test.

There is a presumption that the contract was not tainted with usury. *Commercial Credit Plan, Inc.* v. *Chandler*, supra. This is a presumption, rather than a justifiable or permissible inference, although it is not conclusive or irrebuttable. This is a presumption that arises because usury is a violation of the law, and people are presumed to act in a lawful manner. 91 CJS 69, Usury, § 114; 45 Am. Jur. 2d 265, Usury § 350; *Blackburn v. Thompson*, 127 Ark. 438, 193 S.W. 74. Such a presumption has the effect of evidence.

But putting aside the quantum of proof required and the effect of the presumption, the evidence in this case simply does not show that the chancellor's finding was clearly against the preponderance of the evidence. This was a construction loan. Such loans are repaid when permanent financing is obtained. It matters not when the computer printouts were discontinued. The borrower himself testified that Boyle never even demanded payment of any money set forth on any of the computer printouts or other statement until suit was filed. The suit was not based upon, and did not seek recovery of, any usurious interest and was not based upon any of the computer printouts.

The result of this case is an unwarranted extension of a most drastic and severe penalty based upon the drawing of an inference that the lender had an intention to violate the usury laws of Arkansas, contrary to the inferences drawn by the chancellor who saw and heard the witnesses. It is quite clear to me that the chancellor's result can be, and was, reasonably and fairly reached. I cannot join in this unnecessary and inappropriate action, so I respectfully but vigorously dissent.

HARRIS, C.J., dissents from denial of rehearing.